# EXHIBIT A

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF KING

| | |
|---|---|
| JOHN T. YOERGER,<br><br>    Plaintiff,<br><br>vs.<br><br>AMAZON WEB SERVICES, INC., a Delaware corporation subsidiary of Amazon Inc.; ENRIQUE DUVIOS, an individual; ROMAIN JORDAN an individual, FELIPE LEMAITRE an individual; ALI SPITTEL an individual; HAN LAI an individual<br><br>    Defendants. | No.<br><br>COMPLAINT FOR DAMAGES |

COMES NOW Plaintiff JOHN T. YOERGER, by and through his undersigned attorney, and for claims against Defendants, allege and aver as follows:

**INTRODUCTION**

Washington State maintains a strong and well-established public policy against discrimination in the workplace, codified primarily in the Washington Law Against Discrimination (WLAD), RCW 49.60. This policy reflects the state's commitment to ensure that all individuals have the right to fair and equitable treatment in employment—free from discrimination, harassment, and retaliation based on protected characteristics.

**1. Public Policy Foundation**

1 - COMPLAINT FOR DAMAGES

KNIGHT LEGAL, PLLC
PO BOX 65367
University Place WA 98464
253-656-4475

RCW 49.60.010 declares that practices of discrimination against any of Washington's inhabitants because of race, creed, color, national origin, sex, marital status, sexual orientation, age, disability, or honorably discharged veteran or military status are a matter of state concern. The statute states:

> *"The legislature hereby finds and declares that practices of discrimination against any of its inhabitants because of race, creed, color, national origin, sex... are matters of state concern, that such discrimination threatens not only the rights and proper privileges of its inhabitants but menaces the institutions and foundation of a free democratic state."*

Likewise, practices conducted by individuals and corporations located in Washington State are similarly unlawful. "The provisions of this chapter shall be construed liberally for the accomplishment of the purposes thereof." RCW 49.60.020.

Any person deeming himself or herself injured by any act in violation of this chapter shall have a civil action in a court of competent jurisdiction to enjoin further violations, or to recover the actual damages sustained by the person, or both, together with the cost of suit including reasonable attorneys' fees or any other appropriate remedy authorized by this chapter or the United States Civil Rights Act of 1964 as amended, or the Federal Fair Housing Amendments Act of 1988 (42 U.S.C. Sec. 3601 et seq.). RCW 49.60.030.

## I. Parties

**1.1**    Plaintiff John T. Yoerger ("Yoerger") is an individual currently residing in New York. He worked for AWS beginning in April 2022 as a Senior Developer Events Manager.

**1.2**    Defendant Amazon Web Services, Inc. ("AWS") is a Delaware corporation with its principal place of business in Seattle, King County, Washington.

2 - COMPLAINT FOR DAMAGES

KNIGHT LEGAL, PLLC
PO BOX 65367
University Place WA 98464
253-656-4475

**1.3** Enrique Duvios, an individual, at all relevant times to this complaint was employed by AWS.

**1.4** Romain Jordan, an individual, at all relevant times to this complaint was employed by AWS.

**1.5** Felipe LeMaitre, an individual, at all relevant times to this complaint was employed by AWS. On information and belief, Mr. LeMaitre is a resident of Washington State.

**1.6** Ali Spittel, an individual, at all relevant times to this complaint was employed by AWS. On information and belief, Ms. Spittel is a resident of Washington State.

**1.7** Han Lai, an individual, at all relevant times to this complaint was employed by AWS.

## II. Jurisdiction and Venue

**2.1** **Jurisdiction**: This Court has jurisdiction over this matter as the events and violations occurred within the State of Washington and the corporate Defendants are residents or otherwise conduct business in Washington State as their principal place of business. Several other personally named defendants are Washington State Residents. This Court has jurisdiction under RCW 2.08.010 because the claims arise under Washington State law. Further Washington Courts have concurrent jurisdiction for any relevant federal claims.

**2.2** **Venue**: Venue is proper in King County under RCW 4.12.020(1); 4.12.025 because the unlawful acts occurred in King County, Washington. Alternatively, Defendant's principal place of business is located in King County, Washington.

3 - COMPLAINT FOR DAMAGES

KNIGHT LEGAL, PLLC
PO BOX 65367
University Place WA 98464
253-656-4475

**2.3** Plaintiff filed a formal complaint with the EEOC in accordance with 42 U.S.C. § 2000e-5(e)(1) (Title VII), 42 U.S.C. § 12117(a) (ADA), 29 U.S.C. § 626(d) (ADEA).

**2.4** Plaintiff was issued a formal letter of intent to sue on or about September 4th, 2025.

**2.5** Plaintiff timely filed this action in court of competent jurisdiction. *Tafflin v. Levitt*, 493 U.S. 455, 458–60 (1990). "State courts may assume subject-matter jurisdiction over a federal cause of action absent provision by Congress to the contrary or disabling incompatibility between the federal claim and state-court adjudication"). *See also*, 29 U.S.C. § 2617(a)(2).

### III. Factual Allegations

### Generally

**3.1** Amazon Web Services, Inc. ("AWS") is a subsidiary of Amazon.com Inc., a Delaware corporation.

**3.2** Seattle, Washington is the corporate headquarters where the high level officers direct, control, and coordinate the activities of both AWS and Amazon.com Inc.

**3.3** Generally, the policies and employment practices of AWS are dictated by Amazon.com Inc.

### Job Structures at AWS[1]

**3.4** AWS assigns employees to a "Job Code" which is a code used "to identify individual jobs in Amazon systems."

**3.5** Each Job Code has an assigned "Job Title" which is what the job is called.

---

[1] The employment policies and practices of AWS described hereunder are based on those that were in place as of Plaintiff's last date of employment with AWS, June 6, 2025.

4 - COMPLAINT FOR DAMAGES

KNIGHT LEGAL, PLLC
PO BOX 65367
University Place WA 98464
253-656-4475

**3.6** A Job Code is generally assigned for each unique combination of "Job Level," "Job Family," and "IC or Manager" designation.

**3.7** A "Job Level" is an integer from 1 to 12, excluding nine, that "reflects increasing complexity, required experience, responsibility and scope of a job." The level structure is "designed to reflect the development stages of employees as they begin their career, gain experience, grow their skills, and take on more challenging projects." A level is an "acknowledgement that [the employee] demonstrate[s] the skills outlined in both their current and any previous levels."

**3.8** Generally, corporate jobs begin at level four.

**3.9** A "Job Family" is "a grouping of job codes that have similarities in roles, responsibilities, knowledge, skills, and abilities."

**3.10** The "IC or Manager" designation is a flag used to designate if a job "manages other employees" (a Manager) or "does not manager other employees" (an IC aka Individual Contributor).

**3.11** AWS uses "Role Guidelines" to outline the "general job expectations by level, including technical or other functional skill requirements."

**3.12** Role Guidelines contain, *inter alia*: (1) a "Level Matrix" which is a "high-level view of how expectations of the role map to each level" to "offer a quick comparison of expectations by level;" and (2) a "What you do" section that "explains the more detailed day-to-day expectations of someone successfully operating at that level." It can "guide hiring strategies, employee self-reflection on where they are meeting their role expectations, coaching and career growth and/or performance discussions."

**3.13**

5 - COMPLAINT FOR DAMAGES

KNIGHT LEGAL, PLLC
PO BOX 65367
University Place WA 98464
253-656-4475

**Hiring Process at AWS**

**3.14**    As part of the interview process before an offer is made to a candidate, candidates for non-intern, non-entry level, corporate roles complete an interview "loop" which is a series of four or more one-hour interviews conducted by different interviewers. The job level of the candidate generally dictates the number of interviews.

**3.15**    One of the interviewers in the "loop" is known as a "Bar Raiser" and is an interviewer with more experience and training who act as "objective third parties" that are "not directly connected to the hiring team in order to provide objectivity in decisions."

**3.16**    Candidates for jobs that involve extensive writing, and for jobs at levels six and above, generally also submit a writing sample that is evaluated by the Hiring Manager.

**3.17**    AWS has a "hiring bar" that is based on their "legacy from Day One and the Leadership Principle to Hire and Develop the Best."

**3.18**    The hiring bar is defined as two questions: "Is this person better than 50% of the people currently performing in this role at Amazon?" and "Does this candidate have upside growth potential to have long-term impact at Amazon?"

**3.19**    When interviewing an applicant, each interviewer is instructed to evaluate each candidate "against the Amazon Hiring bar, not other candidates" and to "evaluate candidates based on past performance and results from their previous experience and background."

**3.20**    The 50% figure is "an internal benchmark to Amazon employees in the same job type at the same job level" and asks interviewers to "[c]ompare the candidate to people on your team and in your organization who are currently in that role and level. Assess whether the candidate is better than 50% of them."

6 - COMPLAINT FOR DAMAGES

KNIGHT LEGAL, PLLC
PO BOX 65367
University Place WA 98464
253-656-4475

**3.21**    When evaluating upside growth potential, interviewers should ask themselves "Will the candidate continue to grow and contribute 1-2 years from now?" and should consider "place, complexity, and scale." Interviewers should "[l]ook beyond whether the candidate is promotable" and ask, "Will they continue to expand their contribution and role even if they stay in the same position or move laterally?"

**3.22**    Interviewers must base their feedback and hiring vote on their "assigned competencies" and their assessment "of whether the candidate raises the hiring bar."

**3.23**    All interviewers, including the Hiring Manager and Bar Raiser, vote on a candidate as "strong no hire," "no hire," "hire," or "strong hire."

**3.24**    As an impartial third party whose goal is to uphold the hiring bar, the Bar Raiser has the authority to override the decision of the Hiring Manager.

<strong>Performance Evaluation Process at AWS</strong>

**3.25**    Managers formally evaluate employees at AWS twice per year, during the Q1 "Annual" and Q3 "Mid-Year" or "Trending" performance cycles.

**3.26**    The first step of the evaluation is "Data gathering" where managers are told to "consider the Forte feedback received from peers, additional feedback you gathered throughout the year, and what [the employee] delivered this year comparted to the expectations for their role and level."

**3.27**    Managers are instructed to gather and review data "prior" to evaluating, and that they should "invest sufficient time to gather feedback and consider the employee's performance throughout the year before finalizing [their] evaluation" to "promote accuracy and completeness and help interrupt any unconscious biases that may result from limited or incomplete information."

7 - COMPLAINT FOR DAMAGES

KNIGHT LEGAL, PLLC
PO BOX 65367
University Place WA 98464
253-656-4475

**3.28**    Managers should also gather "objective and varied data from a diverse set of sources," "reference Amazon's role guidelines to consider the scope, ambiguity, complexity and impact of their role and level," and to "consider contextual factors" such as "the organization, the employee's role, and their unique circumstances" because evaluating employees is a "high judgement decision."

**3.29**    During both performance cycles, Managers are first asked to "Evaluate" employes, by rating their employees on their "Performance" (from a scale of one to seven) and "Potential" (a scale of one to four).

**3.30**    "Performance" answers the question "How would you rate this employee against the performance bar for their role and level" and should "consider what the employee delivered and how the employee delivered against Amazon's high bar by demonstrating the Leadership Principles."

**3.31**    "Potential" answers the question "[w]hen thinking about this employee's future contributions compared to others, where would you place them?" and should "consider how an employee's future contributions will grow in scope, complexity, and business or customer impact."

**3.32**    The combination of performance and potential generate one of five "Overall Value" or "OV" ratings: Least Effective, Highly Valued 1, Highly Valued 2, Highly Valued 3, and Top Tier.

**3.33**    Managers are instructed not to provide employees with their OV rating and instead provide a "Performance Summary" based on the Performance scale of "Needs Improvement" for performance rated one to three, "Meets High Bar" for performance rated four to five, and "Exceeds High Bar" for six to seven.

8 - COMPLAINT FOR DAMAGES

**3.34**    AWS does not provide employees with a Performance Summary or OV after the Q3/mid-year cycle completes.

**3.35**    During the Q1 cycle, Managers also rate an employee's via a "Leadership Principle Summary" that evaluates an employee's "effectiveness at demonstrating Amazon Leadership Principles while delivering for customers at their current role and level." Managers can select from three ratings: Development Needed, Solid Strength, or Role Model.

**3.36**    As part of the Q1 cycle, employees complete "Forte," where they solicit feedback from peers, and are rated on their Leadership Principal strengths and growth opportunities.

**3.37**    After "Evaluation" managers meet for a process known as "Calibration" where leaders in an organization discuss all talent in the organization and, generally at populations of 50 or more, engage in a curve-fitting or stack ranking process, where they are expected to leave calibration meeting with their talent closely aligning to defined distribution curve of overall value ratings: 20% Top Tier, 15% Highly Valued 3, 25% Highly Valued 2, 35% Highly Valued 1, and 5% Least Effective.

**3.38**    The purpose of the calibration exercise is to "mitigate bias, promote fairness and equity and maintain a shared understanding of the performance bar."

**3.39**    If managers do not meet the defined curve (for example, because no talent was rated Least Effective), other managers will "uphold the bar" by identifying potential performance deficits of employees.

**3.40**    The calibration process allows other managers to influence the performance rating of employees they do not supervise.

9 - COMPLAINT FOR DAMAGES

KNIGHT LEGAL, PLLC
PO BOX 65367
University Place WA 98464
253-656-4475

**3.41**   The calibration process can result in a manager's initial performance rating of an employee being lowered from the manager's own assessment of the employee.

**3.42**   Likewise, the calibration process and curve-fitting continues upward to higher levels of the organization, and if the curve is not met at a higher level, even after an organization's own calibration exercise, they can be required to revisit and lower the ratings of even more employees to fit the curve.

**3.43**   As part of the talent evaluation process, managers also maintain a "Forward-Looking Slate" or "FLS" where they track, among other things, a "Proposed Promotion Quarter" for employees, and designate certain roles and talent as "critical."

**3.44**   As part of Performance Evaluation, Amazon also tracks "Key Metrics for People Managers" which includes goals for "Top Tier Retention" (retaining talent rated as Top Tier) at 95%. "Unregretted Attrition" (for orgs with a L4 headcount size of 15+ , exits from Amazon while on Focus or Pivot or employees rated Least Effective) at 6% for the Talent Year. Additional goals include growth in DEI representation for L4+ populations, Return-to-Office metrics, and Connections Favorability Scores.

### Performance Management at AWS

**3.45**   To manage "a trend of underperformance" after a manager "has set clear expectations" an employee may be placed in "Focus," a formalized coaching tool for L4+ exempt employees that creates a permanent record of employee performance that is considered "consistently below the bar." Managers are guided to place Employees into Focus when they "continue to not meet performance expectations after direct feedback."

KNIGHT LEGAL, PLLC
PO BOX 65367
University Place WA 98464
253-656-4475

**3.46**    Placement in Focus prohibits an employee from transferring jobs without Senior Vice President approval, which is not a policy for similarly situated employees who are not in Focus and creates audit warnings during talent review if an employee is not rated "Least Effective," but is in Focus, which subjects their performance to additional scrutiny beyond that of their similarly situated peers. An employee who resigns while in Focus is automatically considered unregretted attrition and ineligible for rehire. An employee added to Focus may also have their Proposed Promotion Quarter removed from their manager's Forward-Looking Slate.

**3.47**    AWS recommends to managers that duration of Focus be 60 days.

**3.48**    Organizations generally have a goal that the "dwell time" in Focus for more than 90 days is less than 10% of the organization's population in Focus.

**3.49**    At the conclusion of Focus, managers may either remove an employee from Focus, which "means that the employee has improved and is now trending [Highly Valued 2]" or progress to "Pivot" which is "a tool for employees who show a sustained period of underperformance, despite formalized coaching and support" that is "designed to maintain Amazon's high-performance culture" and provides employees with two options: Leave Amazon with a Severance Payment or continue with a "Improve Plan" (colloquially known as a Performance Improvement Plan or "PIP").

**3.50**    Pivot is not intended for an employee to recover from. For example, a "2023 EPM Highlights" presentation celebrated that "Favorable Pivot Appeals" decreased from 4.17% in 2022 to 2.1% in 2023.

**3.51**    Both Focus and Pivot may also impact the risk of being selected for a layoff. For example, the "U.S. Reduction in Force Selection Criteria Tool" includes by default a

11 - COMPLAINT FOR DAMAGES

KNIGHT LEGAL, PLLC
PO BOX 65367
University Place WA 98464
253-656-4475

weighted percentile factor of 9% for Focus and 9% for Pivot as criterion a decision maker can use to determine if an employee is selected for elimination.

3.52    In a document titled "Good Performance Management: Why and How?" Amazon advises managers that the following "formula" ensures they have the "evidence available to defend" employment claims: (1) "good performance management starts with setting unform performance expectations for all similarly situated employees." (2) "employees should be told that their performance is not meeting expectations, often preferably in writing, well prior to the 'last minute.'" (3) "employees should be offered coaching and opportunities to improve their performance" and (4) "employees should be told of the potential ramifications for failing to rectify those performance problems."

3.53    The document further states that "[a]ll of this must happen before [Amazon] ever place[s] an employee into Pivot. Informal coaching should be utilized first. Managers should use their discretion to determine whether a performance concern is important enough to warrant documentation."

3.54    In providing guidance for drafting a Pivot Plan as part of the same document, Amazon advises managers not to "put into any performance documentation anything related to an employee's protected class, protected conduct, leaves of absence, medical condition or accommodations." To not "draft the [Pivot Plan] as if it were a means to an end." To "identify goals that are relevant and critical to the job only" but not to "provide goals that cannot reasonable [sic] be achieved in the timeframe for the [Pivot Plan], or that exceed what is required of other similarly situated employees." And finally, to not "include typos and/or grammatical mistakes" as it "makes it look like you have not been thoughtful in your approach, thus questioning your motive."

12 - COMPLAINT FOR DAMAGES

**Plaintiff's Employment and Defendant's Conduct**

**3.55**    Plaintiff was recruited to AWS in March 2022 and began employment on April 18, 2022, as a Senior Developer Events Manager, Level 6, with a salary of $160,000. Plaintiff was hired because of his expertise in event marketing and the developer audience had consistently positive performance feedback in his first year.

**3.56**    Plaintiff's job responsibilities included, *inter alia*, managing the budget for event marketing activities run by developer relations, developing an event strategy for the developer relations organization, managing the tickets to and event presence of developer relations at AWS's marquee event, AWS re:Invent, and mentoring and supporting lower-level colleagues.

**3.57**    Plaintiff received accommodation for his disability, including (a) indefinite approval to work remotely; and (b) a first-class travel accommodation to mitigate panic disorder symptoms, approved by AWS's accommodation program on June 6, 2022.

**3.58**    Plaintiff's initial supervisor was Livio Arleo, who at the time was head of developer marketing. Plaintiff's second line supervisor was Felipe LeMaitre, who at the time was director of developer relations.

**3.59**    In 2023, AWS issued a "Return to Office" notice, and Plaintiff submitted a reasonable accommodation request for telework. It was approved on March 3, 2023, for a six-month period and upon review, was approved indefinitely.

**3.60**    On June 6, 2023, Plaintiff was informed by Arleo that his Mid-Year Talent Review outcome was "very good" and praised Plaintiff's strong performance through the first part of the year for various achievements, including authoring documents, contributing to the

13 - COMPLAINT FOR DAMAGES

KNIGHT LEGAL, PLLC
PO BOX 65367
University Place WA 98464
253-656-4475

rollout of a communication and design system used across AWS, and inventing a Student Symposia program.

**3.61**    On June 7, 2023, an Amazon employee attending the AWS Summit in Washington, D.C., was in the Developer Lounge, a physical space in the Exhibit Hall, when he suffered from a medical episode causing cardiac arrest and ultimately death.

**3.62**    Plaintiff was accountable for the part of the management of the event space and was alerted to the incident by Shantavia Craigg, Developer Events Coordinator.

**3.63**    Plaintiff contacted Arleo and LeMaitre to determine the response and worked with the other employees on-site that were staffing the Developer Lounge to understand what happened.

**3.64**    The same day, on June 7, 2023, Plaintiff authored an email addressing "After-Action Feedback" to Jennifer Hartford, then Vice President of Global Events and Brand. The email raised safety concerns, among other things, regarding the response time and lack of employee training in safety protocols. Hartford did not respond to the email.

**3.65**    On July 24, 2023, LeMaitre met with Plaintiff and Arleo and claimed the way Plaintiff provided feedback was not in a way that "earns enough trust" and that any feedback for the events team should go through LeMaitre moving forward. LeMaitre said Amazon lawyers "freaked out" after the email regarding safety concerns and said, "We need to be very careful with what we document in writing . . . if we are saying that something that can be misinterpreted by someone making a lawsuit against AWS and weaponizing the quote against us, that is a mistake that we are creating in terms of exposure . . . if we identify things that in this unfortunate situation of the person passing, things that we did wrong, and

14 - COMPLAINT FOR DAMAGES

KNIGHT LEGAL, PLLC
PO BOX 65367
University Place WA 98464
253-656-4475

we put them in writing, that creates legal exposure of someone making a lawsuit and saying even you accept that you did things wrong in the process."

**3.66**  Plaintiff stated most of the communications were not seeking legal advice and there was no clear line or guidance in this circumstance, but AWS wanted employees to claim "privilege anyway to protect the company."

**3.67**  Amazon's basic personnel policies and practices are outlined in "Owner's Manual and Guide to Employment," also called "the Manual." The Manual instructs employees to "immediately report any accidents or unsafe work practices" and says that no retaliation of any kind will be permitted or tolerated against an associate for making a workers' compensation claim or reporting unsafe work practices.

**3.68**  However, in practice, AWS management has encouraged employees to be careful what they put in writing and to send emails with the General Counsel copied and to write "seeking your advice" in order to privilege information, despite employees not actually seeking legal advice.

**3.69**  For example, in an "Action Items Email Template" shared with note takers for Operational Planning ("OP") documented in the Amazon Wiki, note takers sending a communication are instructed to write "Mark, seeking your counsel" at the top of the email regardless of the contents of the message or whether the message is seeking legal advice.

**3.70**  In August of 2023, Plaintiff traveled to Germany to attend the EMEA Heroes Summit at the request of Taylor Jacobsen, Senior Community Program Manager. The justification for the trip was because Plaintiff had already provided support for the AMER Heroes Summit, and Plaintiff and Jacobsen were exploring the possibility of merging the two events into a single event the following year, the Global Heroes Summit in 2024.

15 - COMPLAINT FOR DAMAGES

KNIGHT LEGAL, PLLC
PO BOX 65367
University Place WA 98464
253-656-4475

**3.71**    While at the event, Plaintiff also helped resolve technical issues with audio/visual conferencing and coordinated with the hotel to handle post-event billing, in addition to his evaluation of the event.

**3.72**    When Plaintiff returned from the trip, Arleo scheduled a 1:1 meeting where he informed Yoerger that two senior managers, Enrique Duvios, then the Head of International Developer Relations, and Romain Jordan, then the Head of Specialist Developer Relations, had reached out and expressed concern about Mr. Yoerger traveling first class and that it was unfair. Mr. Yoerger reminded Mr. Arleo of the accommodation, to which Mr. Arleo agreed, but advised Mr. Yoerger that he should limit who he discloses that to because of "earns trust concerns," noting that "you never know who is listening, how they may feel, or how your accommodations will come across."

**3.73**    On November 6, 2023, Arleo told Plaintiff that he received "negative communication feedback" about himself. Specifically, Arleo said, "[t]he three LT members we need to make sure you are earning trust with are Ross, Enrique, and Romain." Plaintiff informed Arleo that he generally had no interaction with Enrique's and Jordan's teams. Arleo later told him that the issues arose out of his first-class travel and travel to Germany generally.

**3.74**    While attending AWS re:Invent on November 30, 2023, Emily Freeman, then Head of Community Engagement, announced her resignation from AWS. Her resignation was attributed to an ultimatum given by LeMaitre during talent evaluations, where he "required" that every one of his direct reports have at least one employee in "Focus." Freeman refused to do so and instead resigned.

**3.75**    The announcement of the resignation prompted Plaintiff to inquire with Arleo about the possibility of absorbing Freeman's team to report to Plaintiff. Arleo responded that it

16 - COMPLAINT FOR DAMAGES

KNIGHT LEGAL, PLLC
PO BOX 65367
University Place WA 98464
253-656-4475

"would have been an easy conversation, but he had to put [Plaintiff] on Focus" for the "earns trust" issues but emphasized that there were "no issues" with deliverables or work performance outside of not "earning trust" with the managers.

3.76    During talent evaluations, Arleo initially did not indicate that Plaintiff should be placed in Focus. Instead, he was "voted" in by Duvos and Jordan specifically for his first-class travel to Germany.

3.77    Throughout the month of December, Plaintiff consulted Arleo on how to improve in "earns trust" but Arleo candidly said he "did not know" and was "trying to figure out" what Plaintiff could do to be removed from Focus. Arleo consistently emphasized there were no issues with any of the deliverables or work product Plaintiff produced, but rather, that his communication style and "earns trust" was the issue, but it was an "uphill battle" to find any way to demonstrate improvement.

3.78    On December 25, Plaintiff wrote to LeMaitre, requesting additional support in "earning trust" noting: "Over the past few months I've been working on improving my communication approach to better earn trust when I interact with others. Since our meeting in July, I believe I've made progress with our global events colleagues... I've been working with Livio on identifying opportunities to earn trust with others, but am hoping to get some feedback from your vantage point on any specific opportunities to improve or other ways to earn trust... One particular challenge I've faced is I don't have any KPI or incremental means to measure improvement in this area, and any occasions to make positive impressions on others necessarily relies on having a reason to interact with them, which I can't just invent out of nowhere, making it more difficult to find opportunities to demonstrate

17 - COMPLAINT FOR DAMAGES

KNIGHT LEGAL, PLLC
PO BOX 65367
University Place WA 98464
253-656-4475

improvement." LeMaitre did not respond to the email, nor did LeMaitre provide any coaching or additional communication to Plaintiff.

**3.79**    As a result of being placed in Focus, Plaintiff was rated "Least Effective" in his 2023 Talent Evaluation, with "earns trust" as a needed improvement area in spite of eight colleagues rating "earns trust" to be one of his "superpowers." A clear demonstration of Pre-text.

**3.80**    The targeting behavior of Defendants caused Plaintiff to reasonably experience increased panic attacks and exacerbated known mental health conditions. Including requiring adjustments and increases to the dosing of existing medication prescriptions.

**3.81**    Plaintiff took FMLA leave from January 12, 2024, to April 14, 2024, due to exacerbation of panic disorder symptoms caused by AWS's actions.

**3.82**    When Plaintiff returned from FMLA leave, Arleo was reporting to Duvos, and LeMaitre was transferred to another organization. Arleo was also reassigned to the position and title of head of developer marketing. Arleo told Plaintiff directly that he was concerned about him reporting to Duvos because of Duvos's history of dissatisfaction with Plaintiff stemming from his history of accommodation and making safety reports. Arleo informed plaintiff that Duvos did not want Plaintiff working on events, despite event management being the exclusive purpose and function of his role.

**3.83**    AWS reassigned Plaintiff's major projects, stripped him of event management duties, and required him to write a new job description for himself — a direct violation of FMLA's job restoration rights.

**3.84**    Plaintiff's responsibilities did not disappear, rather, they were reassigned within the same reporting structure under Mr. Duvos, and therefore easily transferrable. Other

18 - COMPLAINT FOR DAMAGES

KNIGHT LEGAL, PLLC
PO BOX 65367
University Place WA 98464
253-656-4475

individuals unlawfully took on these responsibilities despite Plaintiff being required to be returned to his previous position and having the best skills to execute their completion.

**3.85**   The biggest project Plaintiff managed, AWS re:Invent, was assigned to Cher Richardson, who directly raised to Duvos that she was unsure why Plaintiff would not resume managing AWS re:Invent upon his return.

**3.86**   Likewise, other work that was assigned to Plaintiff, including organizing the Global Heroes Summit, was spread across multiple program managers, including Shantavia Craigg and Heather Lee. The work had to be spread across multiple headcounts in part because it was Plaintiff's responsibility and specialty, and other Program Managers had existing responsibilities and less expertise in the area.

**3.87**   Arleo required Plaintiff to write a new job description for himself upon his return from protected leave. Plaintiff drafted a new job description for a "Sr. Developer Programs Strategist" and Arleo approved of it. Plaintiff began performing in that role but was quickly reassigned. Plaintiff's original primary roles and responsibilities were not returned.

**3.88**   On July 1, 2024, Plaintiff was moved, reporting to Carol Milanez, Senior Program Manager. Arleo provided handover notes, including sharing with Milanez a "plan to get you out of Focus." Plaintiff and Milanez discussed opportunities in detail, and Plaintiff worked diligently to "earn trust," including successfully supporting the delivery of the Global Heroes Summit, which exceeded its goals and included attendance by Matt Garman, the newly promoted Chief Executive Officer of Amazon Web Services.

**3.89**   Plaintiff's manager Milanez then made a request to remove Plaintiff from Focus on her final day as Plaintiff's supervisor but Duvos blocked this request furthering his

19 - COMPLAINT FOR DAMAGES

KNIGHT LEGAL, PLLC
PO BOX 65367
University Place WA 98464
253-656-4475

discriminatory and retaliatory animus, even though he had already announced he was transferring to another organization in the company.

**3.90**    Plaintiff was then assigned to temporarily support the Generative AI Loft in San Francisco while the headcount for that role was filled, but the duties Plaintiff was assigned were for covering the open requisition, which was in a different job family (Program Management instead of Product Marketing), and a Level 5, instead of Plaintiff's role of Level 6.

**3.91**    Plaintiff's final manager that signed off on his unlawful negative employment action was Ali Spittela.

**3.92**    When Plaintiff returned from San Francisco, Spittel assigned Plaintiff to field marketing for developers for the North American area. On October 22, 2024, Spittel emailed Plaintiff stating she was, "passing along feedback from a leader on our team that they saw you mostly hanging out in the staff lounge during the developer day in SF versus engaging with customers. I understand you like a more behind the scenes role, but I'm concerned about this feedback from an earns trust perspective. There's a repeat pattern of people on the team reaching out to me with feedback on a lot of aspects of earns trust that I'm concerned about."

**3.93**    On or about October 22, 2024, Plaintiff had an email conversation with Spittle outlining how in his two and a half years of being employed in his position, engaging with customers at the events he managed was never in his job description. It was confirmed this was not part of his job description.

**3.94**    Despite it not being in his job description, nor ever properly being articulated as an issue, Plaintiff was placed on a Pivot Plan by his supervisor Ali Spittel, his "Skip Level" supervisor Adam Seligman, and HR partner Han Lai.

20 - COMPLAINT FOR DAMAGES

KNIGHT LEGAL, PLLC
PO BOX 65367
University Place WA 98464
253-656-4475

**3.95**    Given Plaintiff's known anxiety disorder, this basis for placement into a pivot plan is unjustifiable and unconscionable. Plaintiff disproved the justification of the pivot plan, but the management simply shifted the goal post again, putting him on a plan that was impossible to accomplish. This is clear evidence of violations of the law. *See, Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147 (2000); *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506–07 (1993).

**3.96**    Plaintiff was required to receive 100% agreement among multiple individuals on "earns trust" issues, including those that had systematically discriminated and retaliated against him.

**3.97**    No reasonable person could meet such a requirement. Plaintiff therefore went on leave and was forced to procure employment elsewhere. He cited direct discrimination in his resignation.

**3.98**    The individually named Defendants Duvios and Jordan directly discriminated and raised complaints about Plaintiff's disability accommodation in violation of State and Federal laws. Plaintiff raised his objections lawfully and AWS failed to take corrective action. Worse yet, Plaintiff's direct managers then perpetrated a concerted effort to further the discrimination and retaliate against Plaintiff for making lawful workplace complaints by forcing him into Focus, denying his removal from focus, then placing him in a pivot plan. This pivot plan contained metrics that were subjectively and clearly unattainable as he had to "earn trust" with those that perpetuated his discrimination. Ali Spittel and Han Lai oversaw the final stages of the placement into the pivot plan and failed to take corrective action against the clearly pretextual basis for the negative employment action.

21 - COMPLAINT FOR DAMAGES

KNIGHT LEGAL, PLLC
PO BOX 65367
University Place WA 98464
253-656-4475

**3.99**    AWS knew and was aware of the ongoing discrimination and failed to act to correct the discrimination and the hostile work environment this disability discrimination produced. AWS is therefore imputed with this liability of their workers by violating Plaintiff's civil rights.

### IV. Causes of Action

### 4.1 FAILURE TO ACCOMMODATE (RCW 49.60.030)

**4.1.1**    Plaintiff realleges and incorporates by reference all prior paragraphs as though fully set forth herein.

**4.1.2**    RCW 49.60.030 entitles individuals to a right to obtain and hold employment without discrimination, including but not limited to discrimination based on disability.

**4.1.3**    Washington courts look to federal antidiscrimination law, including the Americans with Disabilities Act (ADA), to guide its interpretation of the WLAD—Washington courts generally only depart from federal guidance where it determines the WLAD provides greater protections than its federal counterparts. *Kumar v. Gate Gourmet, Inc.*, 180 Wn.2d 481, 490-91, 325 P.3d 193, 197-98 (2014). The federal guidelines are instructive.

**4.1.4**    "The obligation to make reasonable accommodation is a form of non-discrimination. The reasonable accommodation requirement is best understood as a means by which barriers to the equal employment opportunity of an individual with a disability are removed or alleviated." 29 C.F.R. Pt. 1630, App.

22 - COMPLAINT FOR DAMAGES

KNIGHT LEGAL, PLLC
PO BOX 65367
University Place WA 98464
253-656-4475

**4.1.5**   Where the appropriate reasonable accommodation is not obvious, the employer's duty includes entering into an interactive process with the employee to determine the essential functions of the job, the precise nature of the limitations imposed by the employee's disability, and potential accommodations in light of their effectiveness and the preference of the employee. *Id.*

**4.1.6**   Reassignment is a potential reasonable accommodation, but "[i]n general, reassignment should be considered only when accommodation within the individual's current position would pose an undue hardship." *Id.*

**4.1.7**   Further, "Reassignment may not be used to limit, segregate, or otherwise discriminate against employees with disabilities by forcing reassignments to undesirable positions or to designated offices or facilities. Employers should reassign the individual to an equivalent position, in terms of pay, status, etc., if the individual is qualified, and if the position is vacant within a reasonable amount of time. A 'reasonable amount of time' should be determined in light of the totality of the circumstances." *Id.*

**4.1.8**   Defendants failed to maintain reasonable accommodations by failing to take into consideration plaintiff's disorders during his subsequent reassignments.

**4.1.9**   Furthermore, taking a negative employment action, such as placing Plaintiff into "Pivot" failed to take into reasonable consideration his anxiety disorder by trying to impute negative work assessments because plaintiff failed to properly "engage with customers" when that was not a stated job duty.

23 - COMPLAINT FOR DAMAGES

KNIGHT LEGAL, PLLC
PO BOX 65367
University Place WA 98464
253-656-4475

**4.1.10** Plaintiff was entitled to an ongoing interactive process to properly account for his known disability and Defendants failed in their duty to do so.

**4.1.11** Plaintiff was admonished and had negative employments actions taken against him based exclusively on characteristics related to his known and disclosed disability.

**4.1.12** Punishing plaintiff without engaging in any meaningful accommodation process during reassignments violates the text and spirit of the Washington Law Against Discrimination.

**4.1.13** These actions were perpetuated by the individuals named and are also imputable to the employer, AWS.

## 4.2 DISABILITY DISCRIMINATION (AMERICANS WITH DISABILITIES ACT, 42 U.S.C. § 12112)

**4.2.1** Plaintiff has a disability, as defined in 42 U.S.C. § 12102(1), in that he has physical and/or mental impairments that substantially limit one or more major life activities, and/or was regarded by Defendant as having such an impairment.

**4.2.2** At all times relevant, Plaintiff was an "employee" within the meaning of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12111(4), and Defendant AWS was an "employer" within the meaning of 42 U.S.C. § 12111(5). Plaintiff is a qualified individual with a disability.

**4.2.3** Plaintiff was qualified to perform the essential functions of his position with or without reasonable accommodation.

24 - COMPLAINT FOR DAMAGES

**4.2.4**  Defendant engaged in unlawful employment practices in violation of 42 U.S.C. §

12112 by:

**4.2.4.1** a. Failing to provide reasonable accommodations despite Plaintiff's requests;

**4.2.4.2** b. Failing to engage in the interactive process in good faith to determine an effective

accommodation;

**4.2.4.3** c. Imposing working conditions inconsistent with Plaintiff's medical restrictions; and

**4.2.4.4** d. Subjecting Plaintiff to adverse employment actions, including reassignment, denial

of promotion, and eventual de facto termination, because of his disability and/or his

requests for accommodation.

**4.2.5**  AWS discriminated by using Plaintiff's accommodations as a direct basis for adverse

actions, removing duties, and forcing him into Focus and Pivot despite strong

performance.

**4.2.6**  AWS's conduct altered the terms, conditions, and privileges of employment in

violation of the ADA.

### 4.3 RETALIATION (ADA, 42 U.S.C. § 12203)

**4.3.1**  Plaintiff re-alleges and incorporates by reference all prior paragraphs.

**4.3.2**  At all times relevant, Plaintiff was an "employee" within the meaning of the

Americans with Disabilities Act (ADA), 42 U.S.C. § 12111(4), and Defendant was an

"employer" within the meaning of 42 U.S.C. § 12111(5).

25 - COMPLAINT FOR DAMAGES

**4.3.3**  Under 42 U.S.C. § 12203, it is unlawful for an employer to retaliate against an employee because he has opposed acts made unlawful under the ADA or because he made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the ADA.

**4.3.4**  Plaintiff engaged in protected activity under the ADA, including but not limited to:

**4.3.4.1** a. Requesting reasonable accommodations for his disability;

**4.3.4.2** b. Raising concerns about Defendant's failure to comply with the ADA and interactive process obligations; and

**4.3.4.3** c. Opposing Defendant's discriminatory practices and treatment related to disability.

**4.3.5**  Plaintiff engaged in protected activity by requesting accommodations and objecting to discrimination in the workplace.

**4.3.6**  In response to Plaintiff's protected activity, Defendant retaliated against Plaintiff by subjecting him to materially adverse actions, including:

**4.3.6.1** a. Removing him from assignments and/or positions;

**4.3.6.2** b. Denying him promotions and advancement opportunities; and

**4.3.6.3** d. Subjecting him to hostility, increased scrutiny, and isolation in the workplace.

**4.3.7**  Defendant's retaliatory conduct was intentional and materially adverse, and it would dissuade a reasonable employee from engaging in protected activity under the ADA.

26 - COMPLAINT FOR DAMAGES

**4.3.8**  As a direct and proximate result of Defendant's unlawful retaliation, Plaintiff has suffered lost wages, lost employment benefits, emotional distress, reputational harm, and other damages in an amount to be proven at trial.

**4.3.9**  Defendant's conduct was willful and/or carried out with reckless disregard of Plaintiff's federally protected rights, entitling him to compensatory and punitive damages pursuant to 42 U.S.C. § 1981a.

**4.3.10**  Plaintiff seeks all remedies available under 42 U.S.C. § 12203 and related statutes, including back pay, reinstatement or front pay, compensatory and punitive damages, attorney's fees, and costs.

## 4.4 FMLA INTERFERENCE (FAMILY AND MEDICAL LEAVE ACT, 29 U.S.C. § 2615(A)(1))

**4.4.1**  Plaintiff qualified for FMLA leave under Federal law. Plaintiff took approved FMLA leave from January to April 2024.

**4.4.2**  AWS interfered with FMLA rights by failing to restore him to the same or equivalent position, reassigning duties, and stripping core responsibilities.

**4.4.3**  The FMLA makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise any right that [the FMLA] affords." 29 U.S.C. § 2615(a)(1). The FMLA creates an entitlement to a total of 12 work weeks of leave during any 12–month period to care for the spouse, or a son, daughter, or parent, of the employee, if such spouse, son daughter, or parent has a serious health condition." 29 U.S.C. § 2612(a). A "serious health condition" is one that involves either inpatient treatment in a hospital or continuing treatment by any health care provider. Id. §

27 - COMPLAINT FOR DAMAGES

KNIGHT LEGAL, PLLC
PO BOX 65367
University Place WA 98464
253-656-4475

2611(11). In order to receive leave, an employee is not required to invoke the FMLA expressly; however, he must give his employer notice of the request for leave, "stat[ing] a qualifying reason for the needed leave." 29 C.F.R. § 825.208(a)(2); see also id. § 825.302(c).

**4.4.4**   Under the FMLA, an employer "means any person engaged in commerce or in any industry or activity affecting commerce who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year." 29 U.S.C. § 2611(3)(A)(I). In order to qualify as an "eligible employee" under the FMLA, plaintiff must have been employed "(i) for at least 12 months by the employer with respect to whom leave is requested ... and (ii) for at least 1,250 hours of service with such employer during the previous 12–month period." 29 U.S.C. § 2611(2)(A).

**4.4.5**   Two distinct types of claims are recognized under the FMLA: 1) interference claims, in which an employee asserts that his employer denied or otherwise interfered with his substantive rights under the Act, and 2) retaliation claims, in which an employee asserts that his employer discriminated against him because he engaged in activity protected by the Act. *Deloatch v. Harris Teeter, Inc.*, 797 F.Supp.2d 48, 2011 WL 2750941, at *11 (D.D.C. 2011) . *See also Blankenship v. Buchanan Gen. Hosp.*, 140 F. Supp. 2d 668, 671–72 (W.D. Va. 2001); *Breeden v. Novartis Pharmaceuticals Corp.*, 646 F.3d 43, 49–55 (D.C. Cir. 2011). According to the FMLA, "It shall be unlawful for any employer to discharge or in any other manner discriminate against

28 - COMPLAINT FOR DAMAGES

any individual for opposing any practice made unlawful by [the FMLA]." 29 U.S.C. § 2615(a)(2).

**4.4.6** The FMLA prohibits employers from discriminating against employees for asserting rights under the Act. This prohibition necessarily includes consideration of an employee's use of FMLA leave as a negative factor in an employment action. To establish a prima facie case of FMLA retaliation, an employee must show that he engaged in activity protected under the Act, that he suffered an adverse employment action by the employer, and that a causal connection existed between the employee's action and the adverse employment action. *Blankenship*, 140 F. Supp. 2d at 674; *see also Darby v. Bratch*, 287 F.3d 673, 679 (8th Cir. 2002).

**4.4.7** Plaintiff took protected leave from January 12, 2024 through April 14, 2024.

**4.4.8** When Plaintiff returned, his job duties and responsibilities were changed in a negative manner, as he was moved away from his central role of event management. His two biggest projects, which had a substantial amount of visibility and importance, were given to other employees to lead and never returned despite those employees expressing that the projects should be restored.

**4.4.9** These acts were a *per se* violation of the FMLA requirements under federal law.

**4.4.10** Defendant's interference with Plaintiff's FMLA rights violated 29 U.S.C. § 2615(a)(1) and its implementing regulations, including 29 C.F.R. §§ 825.220(a)–(b).

29 - COMPLAINT FOR DAMAGES

**4.4.11** As a direct and proximate result of Defendant's unlawful interference, Plaintiff has suffered lost wages, lost employment benefits, emotional distress, reputational harm, and other damages in an amount to be proven at trial.

**4.4.12** Defendant's violations of the FMLA were willful, entitling Plaintiff to liquidated damages under 29 U.S.C. § 2617(a)(1)(A)(iii).

**4.4.13** Duvos is likewise personally liable for his actions in violating Plaintiff's rights under FMLA. *See generally*, 29 U.S.C. § 2611(4)(A)(ii)(I). *See also, Graziadio v. Culinary Inst. of Am.*, 817 F.3d 415 (2nd Cir. 2016).

**4.4.14** To the extent they oversaw Plaintiff's work, Defendants Ali Spittel and Han Lai are likewise personally liable for these violations.

## 4.5 DISCRIMINATION FOR PROTECTED STATUS (WLAD 49.60)

**4.5.1** Plaintiff realleges and incorporates via reference all facts asserted above herein.

**4.5.2** RCW 49.60.010 declares a civil right to be free from discrimination for any protected class, status, or activity.

**4.5.3** Plaintiff suffers from a recognized disability and therefore occupies protected status under the law.

**4.5.4** Plaintiff was discriminated against as a direct result of his protected class, specifically his disability and accommodation accompanying his disability.

30 - COMPLAINT FOR DAMAGES

KNIGHT LEGAL, PLLC
PO BOX 65367
University Place WA 98464
253-656-4475

**4.5.5**   Plaintiff was subject to negative employment actions by being placed in "focus" and subsequently on a "Pivot Plan" which materially changed the terms of conditions of employment.

**4.5.6**   These negative employment plans were expressly related to his protected disability status.

**4.5.7**   The express reason provided by Defendant for this negative employment action was Plaintiff's disability. Plaintiff was treated differently because other team members made complaints about his accommodation. This was the direct and proximate cause of his negative employment action.

**4.5.8**   This negative employment action was further compounded by requiring a 100% approval rating on situations requiring to "earn trust" with those who perpetuated the initial discrimination.

**4.5.9**   Plaintiff has suffered substantial economic and noneconomic damage as a result of Defendant's discrimination.

**4.5.10**  Plaintiffs clearly alleged membership in protected classes, adverse actions (denials of promotion, reassignments, isolation), and differential treatment based on those protected statuses. The discrimination is the harm in this case. *Muldrow v. City of St. Louis*, 601 U.S. 346 (2024) (Kavanaugh, J., concurring in the judgment) (explaining that "the discrimination is harm" and that no separate showing of additional injury is required beyond the discriminatory act itself).

31 - COMPLAINT FOR DAMAGES

## 4.6 UNLAWFUL RETALIATION

**4.6.1**    It is unlawful to retaliate against someone for engaging in a protected activity. *See* RCW 49.60.020; *Martini v. Boeing Co*., 137 Wn.2d 357, 364 (1999).

**4.6.2**    To establish a claim under the WLAD a plaintiff must generally show: 1) They belong to a protected class or engaged in a protected activity; 2) They suffered an adverse employment action; and 3) There is a casual connection between the protected class or activity and the adverse employment action.

**4.6.3**    Here, Plaintiff occupied several well-known protected classes, specifically his disability, being granted reasonable accommodation, and taking protected medical leave.

**4.6.4**    Plaintiff also made complaints about workplace safety following the unfortunate incident of another employee. *Supra.*

**4.6.5**    Plaintiff has suffered extreme emotional hardship due to this placement which demonstrates as a substantial factor for workplace retaliation. *Kuhn v. Dept. of Social and Health Servs.*, 132 Wn. App. 103, 113 (2006).

**4.6.6**    Plaintiff made all good faith efforts to meet workplace expectations and did everything necessary to be removed from focus. Because of his history of raising concerns about his disability, a protected activity under state and federal law, he was denied removal from focus and instead was placed on a Pivot plan with impossible benchmarks to reasonably achieve.

**4.6.7**    This was direct retaliation which forced Plaintiff out of the company.

32 - COMPLAINT FOR DAMAGES

KNIGHT LEGAL, PLLC
PO BOX 65367
University Place WA 98464
253-656-4475

## 4.7 HOSTILE WORK ENVIRONMENT

**4.7.1**  Plaintiff realleges and incorporates by reference all prior paragraphs as though fully set forth herein.

**4.7.2**  A prima facie hostile work environment claim under the Washington Law Against Discrimination (WLAD) requires allegations that: (1) the harassment was unwelcome; (2) it was based on a protected characteristic; (3) it affected the terms or conditions of employment; and (4) it is imputable to the employer. *Antonius v. King County*, 153 Wn.2d 256, 261, 103 P.3d 729 (2004); *Glasgow v. Georgia-Pacific Corp.*, 103 Wn.2d 401, 406-07, 693 P.2d 708 (1985).

**4.7.3**  Plaintiff was faced with discriminatory animus directly associated with this disability status. This led to material changes in his work environment.

**4.7.4**  The Washington Supreme Court holds a plaintiff may maintain a hostile work environment claim under the WLAD when the harassment is "sufficiently pervasive so as to alter the conditions of employment and create an abusive working environment," and that such claims are not limited to sex discrimination, but extend to other protected classes under WLAD, including disability. *Robel v. Roundup Corp.*, 148 Wn.2d 35, 49, 59 P.3d 611 (2002).

**4.7.5**  The court has held that the elements of a hostile work environment claim are the same whether the harassment is based on sex, race, age, or disability." (*Robel,* 148 Wn.2d at 45–49).

33 - COMPLAINT FOR DAMAGES

KNIGHT LEGAL, PLLC
PO BOX 65367
University Place WA 98464
253-656-4475

**4.7.6**  The 9th Circuit has likewise held disability discrimination claims are available under the Americans with Disabilities Act and the Rehabilitation Act. *See Mattioda v. Nelson*, 93 F.4th 857 (9th Cir. 2024).

**4.7.7**  Here the causal nexus is clear, the individuals that complained about his travel accommodation were directly responsible for the negative employment actions. The employer knew of the complaints of Plaintiff about those influencing his evaluation based on discriminatory animus and took no corrective action.

**4.7.8**  Plaintiff had a direct negative employment action related to his protected status and activities and was given no meaningful option of continued employment.

### 4.8 CONSTRUCTIVE DISCHARGE

**4.8.1**  Plaintiff realleges and incorporates by reference all prior paragraphs as though fully set forth herein.

**4.8.2**  Plaintiff's clear and unambiguous claim for FMLA interference and retaliation sets a clear back drop for constructive discharge. Every single time Plaintiff engaged in a protected activity; he was retaliated against.

**4.8.3**  Further, the individuals that retaliated against him continued to hold his professional career in their hands.

**4.8.4**  "Under the constructive discharge doctrine, an employee's reasonable decision to resign because of unendurable working conditions is assimilated to a formal discharge for remedial purposes. . .  The inquiry is objective: Did working conditions become so intolerable that a reasonable person in the employee's position would have felt

34 - COMPLAINT FOR DAMAGES

KNIGHT LEGAL, PLLC
PO BOX 65367
University Place WA 98464
253-656-4475

1    compelled to resign?" *Pa. State Police v. Suders*, 542 U.S. 129, 141, 124 S. Ct. 2342,

2    2351 (2004).

**4.8.5**    Plaintiff alleges that high-level supervisors at Amazon, on the basis of Mr. Yoerger's

disability and accommodations, initiated and sustained a series of employment actions

that subjected him to unattainable goals designed to force him out of the company on a

pretextual rationale. Plaintiff attempted in good faith to meet these goals but was

ultimately presented with an offer to accept a severance or to agree that his

employment would be terminated if he did not meet specific unattainable goals within

a particular time.

**4.8.6**    Plaintiff's constructive discharge claim does not have to succeed for his prima facie

claim of disability discrimination because placements in Amazon's Focus and Pivot

programs are adverse employment actions in themselves. The adverse employment

action element of a discrimination claim requires only a showing of "some harm

respecting an identifiable term or condition of employment." *Muldrow v. City of St.

Louis*, 601 U.S. 346, 355, 144 S. Ct. 967, 974 (2024). There is no heightened bar, such

as "significant," "serious," or "substantial," for this injury. *Id*. In *Muldrow*, the Court

held that a change in job duties, a reduction in regularity of scheduling, and loss of a

take-home car were sufficient to establish injury in a Title VII discrimination claim

even though the plaintiff's rank, pay, and opportunity for advancement remained the

same. *Id.* at 359.

**4.8.7**    Placement in Focus is, even more than the employment actions described in *Muldrow*,

an adverse employment action, because it changes the conditions required to transfer

35 - COMPLAINT FOR DAMAGES

KNIGHT LEGAL, PLLC
PO BOX 65367
University Place WA 98464
253-656-4475

jobs, subjects' employees to heightened performance scrutiny, marks employees as ineligible for rehire if the leave while in Focus and affects the calculation of total compensation.

**4.8.8**   Amazon itself has admitted in other recent litigation that "placement in Focus can impact internal transfer opportunities and total compensation." Def.'s Answer to Pls.' Compl., *Wilmuth v. Amazon.com, Inc.*, No. 2:23-cv-01774 (W.D. Wash. Feb. 10, 2025), ECF No. 70, ¶ 189. Placement on a performance improvement plan such as Pivot can constitute an adverse employment action in the Title VII context as well. *See Anderson v. Amazon.com, Inc.*, No. 23-cv-8347 (AS), 2024 U.S. Dist. LEXIS 98215, at *28-29 (S.D.N.Y. May 31, 2024) (finding a PIP satisfied a plausible allegation standard for adverse employment action based on the standard articulated in *Muldrow*).

**4.8.9**   Plaintiff was left with a clear choice, either resign or be fired. Plaintiff chose the latter to preserve his reputation, legal rights, and mental health.

**4.8.10**   Any reasonable person familiar with the above stated amazon working conditions would have likewise been forced out under these circumstances.

**4.9 UNFAIR PRACTICE TO AID, ABET, ENCOURAGE, OR INCITE A VIOLATION OF WLAD: REVISED CODE OF WASHINGTON, § 49.60.220**

**4.9.1**   WLAD prohibits individuals from committing unfair practices that discriminate against individuals on the basis of disability. One of these unfair practices is "to aid, abet, encourage, or incite the commission of any unfair practice[s]."[2] "Obstruct[ing] or

---

[2] Wash. Rev. Code § 49.60.220 (2024).

36 - COMPLAINT FOR DAMAGES

KNIGHT LEGAL, PLLC
PO BOX 65367
University Place WA 98464
253-656-4475

prevent[ing] any other person from complying" with WLAD is another impermissible unfair practice.[3] The Washington State Legislature intends to apply this provision broadly, so that individuals can enforce their rights under WLAD.[4] One of these rights is protection from discrimination based on disability.[5]

**4.9.2** The individually named management and human resources members aided and abetted the violation of Washington State's law against discrimination and retaliation. Each named individual played a direct role in the unlawful departure of plaintiff as outlined above. These individuals conduct was known to AWS and is therefore imputable to the employer under theories of respondeat superior.

**4.9.3** Further, under Washington law these individuals a personally liable for their individual conduct and role in aiding and abetting the unlawful treatment of Plaintiff.

**4.9.4** Plaintiff seeks judgment from all named defendants for their unlawful behaviors.

### 4.10    UNLAWFUL RETALIATION FOR OPPOSING ILLEGAL ACTIVITY (RCW 49.44.211)

**4.10.1** "The legislature recognizes that there exists a strong public policy in favor of the disclosure of illegal discrimination, illegal harassment, illegal retaliation, wage and hour violations, and sexual assault, that is recognized as illegal under Washington state, federal, or common law, or that is recognized as against a clear mandate of public policy,

---

[3] *Id.*

[4] *See Jenkins v. Palmer*, 66 P.3d 1119, 1121 (Wash. App. 2003) ("RCW 49.60.220, although broad, focuses on conduct that encourages others to violate the WLAD."); *Id.* ("The references to "aid, abet, encourage, or incite" and to "prevent any other person from complying" show that the statute applies only where the actor is attempting to or has involved a third person in conduct that would violate the WLAD.").

[5] WASH. REV. CODE § 49.60.030(1) (2024).

37 - COMPLAINT FOR DAMAGES

KNIGHT LEGAL, PLLC
PO BOX 65367
University Place WA 98464
253-656-4475

that occurs at the workplace, at work-related events coordinated by or through the employer, between employees, or between an employer and an employee, whether on or off the employment premises. Nondisclosure and nondisparagement provisions in agreements between employers and current, former, prospective employees, and independent contractors have become routine and perpetuate illegal conduct by silencing those who are victims or who have knowledge of illegal discrimination, illegal harassment, illegal retaliation, wage and hour violations, or sexual assault. It is the intent of the legislature to prohibit nondisclosure and nondisparagement provisions in agreements, which defeat the strong public policy in favor of disclosure."

**4.10.2** Prohibited Nondisclosure and Nondisparagement Provisions – RCW 49.44.211: Makes it unlawful for employers to retaliate against employees for disclosing or discussing conduct they reasonably believe to be illegal harassment, discrimination, retaliation, wage and hour violations, or sexual assault.

**4.10.3** It is a violation of this section for an employer to discharge or otherwise discriminate or retaliate against an employee for disclosing or discussing conduct that the employee reasonably believed to be illegal harassment, illegal discrimination, illegal retaliation, wage and hour violations, or sexual assault, that is recognized as illegal under state, federal, or common law, or that is recognized as against a clear mandate of public policy, occurring in the workplace, at work-related events coordinated by or through the employer, between employees, or between an employer and an employee, whether on or off the employment premises.

**4.10.4** Plaintiff made ongoing complaints and statements about his unlawful treatment, and ongoing workplace issues, and was retaliated for making these statements.

38 - COMPLAINT FOR DAMAGES

**4.10.5** Plaintiff is entitled to damages, including statutory damages for these actions.

### 4.11    VIOLATIONS OF RCW 49.12 – FAILURE TO DISCLOSE PERSONNEL RECORDS AND DISCHARGE STATEMENT

**4.11.1** On or about August 4th, Plaintiff made a written request to Amazon for a complete copy of Plaintiff's personnel file under RCW 49.12.250.

**4.11.2** Plaintiff also requested a signed written statement of discharge, stating the effective date of termination and the reasons for the discharge, as required by RCW 49.12.250(1)(b).

**4.11.3** Plaintiff provided Amazon with a Notice of Intent to Sue pursuant to RCW 49.12.250 and Section 3 of SHB 1308.

**4.11.4** Despite these requests, Amazon failed to produce a complete personnel file and failed to provide the required discharge statement within 21 calendar days.

**4.11.5** Amazon further contended that because Plaintiff was employed in Virginia, Washington's Industrial Welfare Act did not apply.

**4.11.6** However, RCW 49.12.240 and RCW 49.12.250 define "employee" broadly, covering all employees of Washington employers, and expressly grant former employees the right to their personnel records.

**4.11.7** RCW 49.12.005 defines "employee" broadly as any employee "employed in the business of the employer" and RCW 49.12.010 declares that Washington has a sovereign interest in protecting "all employees" from unfair conditions of labor.

**4.11.8** Plaintiff then received an incomplete personnel file with no statement of discharge, as required by statute, on or about August 28th, 2025. To date, Plaintiff has received no

39 - COMPLAINT FOR DAMAGES

KNIGHT LEGAL, PLLC
PO BOX 65367
University Place WA 98464
253-656-4475

statement of discharge, nor a complete personnel file as required by Washington State law.

**4.11.9** Specifically, the personnel file lacked all documents related to his accommodation, his complaints against third parties, his complaints about workplace safety, his federally protected leave, and his performance reviews including the Focus and Pivot documents.

**4.11.10** AWS, as a subsidiary of Amazon Inc., is headquartered in Washington, employs thousands of employees in Washington, and is subject to Washington law.

**4.11.11** Defendant violated RCW 49.12.250 by failing to provide Plaintiff's personnel file and discharge statement within the statutory deadlines.

**4.11.12** Defendant's conduct entitles Plaintiff to statutory damages of not less than $250 per violation, escalating to $1,000 for delays beyond 35 days as well as attorney's fees and costs. The statute also allows for $500 for each additional violation.

**4.11.13** Plaintiff is entitled to reasonable attorney fees and costs associated with brining this action.

### 4.12    Negligent Infliction of Emotional Distress (NIED)

**4.12.1** Plaintiff realleges and incorporates by reference all prior paragraphs as though fully set forth herein.

**4.12.2** Defendants owed Plaintiff a duty of care to provide a workplace free from discrimination.

**4.12.3** Defendants breached that duty by discriminating against Plaintiff on the basis of her disability and by acting in bad faith as if it was engaging in an interactive process to

40 - COMPLAINT FOR DAMAGES

KNIGHT LEGAL, PLLC
PO BOX 65367
University Place WA 98464
253-656-4475

accommodate Plaintiff's disability; by failing to engage in the interactive process
when issues were raised; by unlawfully reassigning plaintiff; by failing to return
plaintiff's job duties, plaintiff suffered harm.

**4.12.4** Defendants further breached that duty by requiring Plaintiff to accept an objectively
inferior role to which diminished his work esteem and reputation.

**4.12.5** Defendant's negligent actions and omissions caused Plaintiff to suffer serious
emotional distress, including but not limited to anxiety, humiliation, sleep disruption,
and loss of professional confidence.

**4.12.6** Plaintiff's emotional distress is of a nature and severity that a reasonable person would
experience under the same or similar circumstances.

**4.12.7** All of the above listed activities can be imputed to the employer under the theory of
Respondeat superior.

## V. Relief Requested

1. **Back and Front Wages**:
   - Plaintiff seeks all back wages, including any unpaid overtime, medical
     payments, or other lost wages due to unlawful extended unpaid leave with pre
     and post-judgment interest.

   - Plaintiff seeks all future wage losses and material benefits he was denied due
     to his unlawful treatment and placement into focus and a Pivot Plan.

   - Plaintiff requests all relevant interest and Tax setoffs as allowable under state
     and federal law.

41 - COMPLAINT FOR DAMAGES

KNIGHT LEGAL, PLLC
PO BOX 65367
University Place WA 98464
253-656-4475

2. **Damages:**

  o   Plaintiff seeks all damages and penalties as allowed by law including
      Economic damages, Statutory Damages, and Punitive damages allowable
      under Federal law.

  o   Plaintiff seeks non-economic damages in amounts to be proven at trial.

3. **Attorney's Fees and Costs**:

  o   Plaintiff requests an award of attorney's fees and costs incurred in bringing this
      action, as allowed under Washington State and Federal law.

4. **Any Other Relief**:

  o   Plaintiff requests any other relief that the Court deems just and proper.

KNIGHT LEGAL PLLC

*Paul J Boudreaux*

PAUL J. BOUDREAUX WSBA#49038
Attorney for Plaintiffs
PO BOX 65367
University Place Washington, 98464

42 - COMPLAINT FOR DAMAGES

KNIGHT LEGAL, PLLC
PO BOX 65367
University Place WA 98464
253-656-4475

ØŠÒÖ
Œ€Í ÁJÔV⁄Ë ÆŒ«Ëï ÁÚT
SⱭ Õ⁄ÒU WⱣ VÝ
ÙŴŰÒÜⱭJÜⱭŪWÜVⱭŠÒÜS
Ò ⱭŠÒÖ
ÔŒÜ ÒÄ «Æ Ë€ŒJÍ Í €Ë ÁÙÒŒ

THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR KING COUNTY

|                                                                 |                |
| --------------------------------------------------------------- | -------------- |
| JOHN T. YOERGER,                                                 | NO.            |
|                                                    Plaintiff,    |                |
| vs.                                                             |                |
|                                                                 | Summons        |
| AMAZON WEB SERVICES, INC., a                                    |                |
| Delaware corporation subsidiary of Amazon                       |                |
| Inc.; ENRIQUE DUVIOS, an individual;                            |                |
| ROMAIN JORDAN an individual, FELIPE                             |                |
| LEMAITRE an individual; ALI SPITTEL an                          |                |
| individual; HAN LAI an individual                               |                |
|                                                                 |                |
| Defendants                                                      |                |

TO:    AMAZON WEB SERVICES INC.

A lawsuit has been started against you and each of you in the above-entitled Court by the above-named Plaintiff(s).  Plaintiff's claim is stated in the written complaint, a copy of which is served upon you with this summons.

In order to defend against this lawsuit, you must respond to the complaint by stating your defense in writing, and serve a copy upon the undersigned attorney for the plaintiff(s) within twenty (20) days after the service of this summons, excluding the day of service, or within sixty (60) days after the service of this summons if served outside the State of Washington, or a default judgment may be entered against you without notice.  A default judgment is one where plaintiff(s) is/are entitled to what he/she asks for because you have not responded.  If you serve a notice of appearance on the undersigned attorney, you are entitled to notice before a default judgment may be entered.

Summons - 1

**KNIGHT LEGAL PLLC**
**PO BOX 65367**
**UNIVERSITY PLACE, WA 98464**
**(253) 656-4475**

You may demand that the plaintiff's file this lawsuit with the court.  If you do so, the demand must be in writing and must be served upon the plaintiff.  Within 14 days after you serve the demand, the plaintiff(s) must file this lawsuit with the court, or the service on you of this summons and amended complaint will be void.

**If you wish to seek the advice of an attorney in this matter, you should do so promptly so that your written response, if any, may be served on time.**

This summons is issued pursuant to Rule 4 of the Superior Court Civil Rules of the State of Washington.

DATED this 7th day of October 2025.

KNIGHT LEGAL PLLC

*Paul J Boudreaux*
_____
PAUL J. BOUDREAUX WSBA#49038
Attorney for Plaintiffs

Summons - 2

ØŠÒÖ

G∈GÍÁJÔVÆÏ ÆGKÍ ÁÚT
SÓ–ÕÁÕUWÞVÝ
ÙWÚÒÜÒJÜÁÕUWÜVÁÕŠÒÜS
ÒÍZ¸ŠÒÖ
Ô∘ŒÜÒÀÆKÆÍ ÍGÆGJÍÍ∈ÍÁÚÒŒ

THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR KING COUNTY

| | |
|---|---|
| JOHN T. YOERGER,<br>                                    Plaintiff,<br><br>vs.<br><br>AMAZON WEB SERVICES, INC., a<br>Delaware corporation subsidiary of Amazon<br>Inc.; ENRIQUE DUVIOS, an individual;<br>ROMAIN JORDAN an individual, FELIPE<br>LEMAITRE an individual; ALI SPITTEL an<br>individual; HAN LAI an individual<br><br>Defendants | NO.<br><br>Summons |

TO:    ALI SPITTEL

        A lawsuit has been started against you and each of you in the above-entitled Court by the above-named Plaintiff(s).  Plaintiff's claim is stated in the written complaint, a copy of which is served upon you with this summons.

        In order to defend against this lawsuit, you must respond to the complaint by stating your defense in writing, and serve a copy upon the undersigned attorney for the plaintiff(s) within twenty (20) days after the service of this summons, excluding the day of service, or within sixty (60) days after the service of this summons if served outside the State of Washington, or a default judgment may be entered against you without notice.  A default judgment is one where plaintiff(s) is/are entitled to what he/she asks for because you have not responded.  If you serve a notice of appearance on the undersigned attorney, you are entitled to notice before a default judgment may be entered.

Summons - 1

**KNIGHT LEGAL PLLC**
**PO BOX 65367**
**UNIVERSITY PLACE, WA 98464**
**(253) 656-4475**

You may demand that the plaintiff's file this lawsuit with the court.  If you do so, the demand must be in writing and must be served upon the plaintiff.  Within 14 days after you serve the demand, the plaintiff(s) must file this lawsuit with the court, or the service on you of this summons and amended complaint will be void.

**If you wish to seek the advice of an attorney in this matter, you should do so promptly so that your written response, if any, may be served on time.**

This summons is issued pursuant to Rule 4 of the Superior Court Civil Rules of the State of Washington.

DATED this 7th day of October 2025.

KNIGHT LEGAL PLLC

*Paul J Boudreaux*

PAUL J. BOUDREAUX WSBA#49038
Attorney for Plaintiffs

Summons - 2

KNIGHT LEGAL PLLC
PO BOX 65367
UNIVERSITY PLACE, WA 98464
(253) 656-4475

ØŠÒÖ

ŒŒÍ ÁÙ ÔVÆÏ Æ ŒŒÏ Á T
S Õ ÕUW VÝ
ÙWÚ Õ U Ù Ú ÕUW Ù Õ Ò Ù S
Ò ŠÒÖ
Ô Œ Ò Å Œ ŒÆ ŒÍ Í €Ë ÁU Œ

THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR KING COUNTY

| | |
|---|---|
| JOHN T. YOERGER, | NO. |
| Plaintiff, | |
| vs. | Summons |
| AMAZON WEB SERVICES, INC., a Delaware corporation subsidiary of Amazon Inc.; ENRIQUE DUVIOS, an individual; ROMAIN JORDAN an individual, FELIPE LEMAITRE an individual; ALI SPITTEL an individual; HAN LAI an individual | |
| Defendants | |

TO:    ENRIQUE DUVIOS

A lawsuit has been started against you and each of you in the above-entitled Court by the above-named Plaintiff(s).  Plaintiff's claim is stated in the written complaint, a copy of which is served upon you with this summons.

In order to defend against this lawsuit, you must respond to the complaint by stating your defense in writing, and serve a copy upon the undersigned attorney for the plaintiff(s) within twenty (20) days after the service of this summons, excluding the day of service, or within sixty (60) days after the service of this summons if served outside the State of Washington, or a default judgment may be entered against you without notice.  A default judgment is one where plaintiff(s) is/are entitled to what he/she asks for because you have not responded.  If you serve a notice of appearance on the undersigned attorney, you are entitled to notice before a default judgment may be entered.

Summons - 1

KNIGHT LEGAL PLLC
PO BOX 65367
UNIVERSITY PLACE, WA 98464
(253) 656-4475

You may demand that the plaintiff's file this lawsuit with the court. If you do so, the demand must be in writing and must be served upon the plaintiff. Within 14 days after you serve the demand, the plaintiff(s) must file this lawsuit with the court, or the service on you of this summons and amended complaint will be void.

**If you wish to seek the advice of an attorney in this matter, you should do so promptly so that your written response, if any, may be served on time.**

This summons is issued pursuant to Rule 4 of the Superior Court Civil Rules of the State of Washington.

DATED this 7th day of October 2025.

KNIGHT LEGAL PLLC

*Paul J Boudreaux*

PAUL J. BOUDREAUX WSBA#49038
Attorney for Plaintiffs

Summons - 2

ØŠÖ
Œ Í ÁJ Ô V Æ Æ Œ ¶ Á T
S Œ Õ Á Û U W Þ V Ý
Ù W Ú Ù Œ U Ü Á Û U W Ü V Á Õ Ù Œ U S
Ò Š Ö
Ô Œ Ü Ò Å Œ Œ Í Œ Œ J Í Í € Œ Á Ù Œ

THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR KING COUNTY

| | |
|---|---|
| JOHN T. YOERGER,<br> Plaintiff, <br>vs.<br><br>AMAZON WEB SERVICES, INC., a Delaware corporation subsidiary of Amazon Inc.; ENRIQUE DUVIOS, an individual; ROMAIN JORDAN an individual, FELIPE LEMAITRE an individual; ALI SPITTEL an individual; HAN LAI an individual<br><br>Defendants | NO.<br><br>Summons |

TO:    FELIPE LEMAITRE

A lawsuit has been started against you and each of you in the above-entitled Court by the above-named Plaintiff(s).  Plaintiff's claim is stated in the written complaint, a copy of which is served upon you with this summons.

In order to defend against this lawsuit, you must respond to the complaint by stating your defense in writing, and serve a copy upon the undersigned attorney for the plaintiff(s) within twenty (20) days after the service of this summons, excluding the day of service, or within sixty (60) days after the service of this summons if served outside the State of Washington, or a default judgment may be entered against you without notice.  A default judgment is one where plaintiff(s) is/are entitled to what he/she asks for because you have not responded.  If you serve a notice of appearance on the undersigned attorney, you are entitled to notice before a default judgment may be entered.

Summons - 1

**KNIGHT LEGAL PLLC**
**PO BOX 65367**
**UNIVERSITY PLACE, WA 98464**
**(253) 656-4475**

You may demand that the plaintiff's file this lawsuit with the court.  If you do so, the demand must be in writing and must be served upon the plaintiff.  Within 14 days after you serve the demand, the plaintiff(s) must file this lawsuit with the court, or the service on you of this summons and amended complaint will be void.

**If you wish to seek the advice of an attorney in this matter, you should do so promptly so that your written response, if any, may be served on time.**

This summons is issued pursuant to Rule 4 of the Superior Court Civil Rules of the State of Washington.

DATED this 7th day of October 2025.

KNIGHT LEGAL PLLC

*Paul J Boudreaux*
_____
PAUL J. BOUDREAUX WSBA#49038
Attorney for Plaintiffs

Summons - 2

THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR KING COUNTY

| | |
|---|---|
| JOHN T. YOERGER, <br>                                Plaintiff, <br> vs. <br><br> AMAZON WEB SERVICES, INC., a <br> Delaware corporation subsidiary of Amazon <br> Inc.; ENRIQUE DUVIOS, an individual; <br> ROMAIN JORDAN an individual, FELIPE <br> LEMAITRE an individual; ALI SPITTEL an <br> individual; HAN LAI an individual <br><br> Defendants | NO. <br><br> Summons |

TO:    HAN LAI

      A lawsuit has been started against you and each of you in the above-entitled Court by the above-named Plaintiff(s).  Plaintiff's claim is stated in the written complaint, a copy of which is served upon you with this summons.

      In order to defend against this lawsuit, you must respond to the complaint by stating your defense in writing, and serve a copy upon the undersigned attorney for the plaintiff(s) within twenty (20) days after the service of this summons, excluding the day of service, or within sixty (60) days after the service of this summons if served outside the State of Washington, or a default judgment may be entered against you without notice.  A default judgment is one where plaintiff(s) is/are entitled to what he/she asks for because you have not responded.  If you serve a notice of appearance on the undersigned attorney, you are entitled to notice before a default judgment may be entered.

Summons - 1

                                    **KNIGHT LEGAL PLLC**
                                          PO BOX 65367
                           **UNIVERSITY PLACE, WA 98464**
                                    **(253) 656-4475**

You may demand that the plaintiff's file this lawsuit with the court. If you do so, the demand must be in writing and must be served upon the plaintiff. Within 14 days after you serve the demand, the plaintiff(s) must file this lawsuit with the court, or the service on you of this summons and amended complaint will be void.

**If you wish to seek the advice of an attorney in this matter, you should do so promptly so that your written response, if any, may be served on time.**

This summons is issued pursuant to Rule 4 of the Superior Court Civil Rules of the State of Washington.

DATED this 7th day of October 2025.

KNIGHT LEGAL PLLC

*Paul J Boudreaux*

PAUL J. BOUDREAUX WSBA#49038
Attorney for Plaintiffs

Summons - 2

ØŠÒÖ
GⱢⰘÁJÔV̊Æ̊Æ̊ȘKⱢÁUT
SⰘÕÅÔUWⱢVŸ
ÙWÚÒÜ̊QⱢÜ̊ÅÔUWÜVÅ̊Ô̊ŠÒÜ̊S
Ò̊Ž̊ŠÒÖ
Ô̊Œ̊Ü̊Ò̊Å̊ Å̊KÄGⱢⰘⰘ̊GⱢJÍ̊Í̊€̊È̊ÁÙ̊Ò̊Œ

THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR KING COUNTY

| | |
|---|---|
| JOHN T. YOERGER,<br><br>                              Plaintiff,<br><br>vs.<br><br>AMAZON WEB SERVICES, INC., a<br>Delaware corporation subsidiary of Amazon<br>Inc.; ENRIQUE DUVIOS, an individual;<br>ROMAIN JORDAN an individual, FELIPE<br>LEMAITRE an individual; ALI SPITTEL an<br>individual; HAN LAI an individual<br><br>Defendants | NO.<br><br><br>Summons |

TO:    ROMAIN JORDAN

A lawsuit has been started against you and each of you in the above-entitled Court by the above-named Plaintiff(s).  Plaintiff's claim is stated in the written complaint, a copy of which is served upon you with this summons.

In order to defend against this lawsuit, you must respond to the complaint by stating your defense in writing, and serve a copy upon the undersigned attorney for the plaintiff(s) within twenty (20) days after the service of this summons, excluding the day of service, or within sixty (60) days after the service of this summons if served outside the State of Washington, or a default judgment may be entered against you without notice.  A default judgment is one where plaintiff(s) is/are entitled to what he/she asks for because you have not responded.  If you serve a notice of appearance on the undersigned attorney, you are entitled to notice before a default judgment may be entered.

Summons - 1

KNIGHT LEGAL PLLC
PO BOX 65367
UNIVERSITY PLACE, WA 98464
(253) 656-4475

You may demand that the plaintiff's file this lawsuit with the court. If you do so, the demand must be in writing and must be served upon the plaintiff. Within 14 days after you serve the demand, the plaintiff(s) must file this lawsuit with the court, or the service on you of this summons and amended complaint will be void.

**If you wish to seek the advice of an attorney in this matter, you should do so promptly so that your written response, if any, may be served on time.**

This summons is issued pursuant to Rule 4 of the Superior Court Civil Rules of the State of Washington.

DATED this 7th day of October 2025.

KNIGHT LEGAL PLLC

*Paul J Boudreaux*

PAUL J. BOUDREAUX WSBA#49038
Attorney for Plaintiffs

Summons - 2